**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SHENTELLE DAIGLE | CIVIL ACTION

VERSUS | 3:25-1088-SDD-EWD

CITY OF DONALDSONVILLE

## RULING

This matter is before the Court on the *Motion to Dismiss Under Rule 12(b)(6)* filed by Defendant, the City of Donaldsonville (the "City").[1] Plaintiff, Shentelle Daigle ("Plaintiff" or "Daigle"), has filed an *Opposition*.[2] After careful consideration of the arguments and the applicable law, the Court is prepared to rule. For the following reasons, Donaldsonville's *Motion to Dismiss Under Rule 12(b)(6)* shall be GRANTED in part and DENIED in part.

## I. FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

This lawsuit arises from Daigle's recording of a public meeting on May 19, 2025, and the alleged retaliatory actions of the City in response thereto. The Court accepts as true the following facts set forth in Daigle's *Supplemental and Amending Complaint* (the "*Amending Complaint*").[3]

Daigle is a resident of Donaldsonville and serves a member of the City's Board of Zoning Adjustment (the "Board").[4] Daigle was nominated to her Board position by Councilman Clem Brown ("Councilman Brown") and subsequently appointed by the City

---

[1] Rec. Doc. No. 37.
[2] Rec. Doc. No. 52.
[3] Rec. Doc. No. 33.
[4] *Id.* ¶¶ 1, 6.

Council for a three-year term.[5] Both prior to, and following, her appointment to the Board, Daigle has routinely attended City Council meetings, often recording the proceedings with her iPhone for posting and/or live streaming to her Facebook page, which boasts a considerable following.[6] Notably, "Ms. Daigle is the only resident who regularly attends and records City Council meetings."[7]

On May 19, 2025, Daigle attended and recorded a meeting for the City Council's Committee of the Whole.[8] Immediately following the meeting's conclusion, Councilman Brown and Glen Price ("Price"), a former mayoral candidate, became involved in a physical altercation in the meeting room.[9] Daigle's recording captured the altercation, as well as Councilman Brown commenting to Price, "[l]et's go behind the levee … [and] I'll put a bullet in your head."[10] As she filmed, however, Daigle's hand was physically pushed by Councilman Michael Sullivan ("Councilman Sullivan"), who repeatedly instructed to Daigle, "don't film that."[11] Daigle responded, "[i]t's for my safety and everyone else's safety. I have the right to record."[12] No member of the City's Council subsequently discussed or acknowledged the altercation in public, and no minutes were published for the May 19 meeting.[13]

One week later, on May 27, 2025, the City Council introduced Ordinance 2025-12 (the "2025 Ordinance"), proposing guidelines applicable "to any citizen or news

---

[5] *Id.* ¶ 13.
[6] *Id.* ¶¶ 6-8.
[7] *Id.* ¶ 25.
[8] *Id.* ¶¶ 18-19. The City's briefing describes "Committee of the Whole" meetings as proceedings intended "for information purposes" at which "no formal action [is] taken." Rec. Doc. No. 37-1, pp. 11-12.
[9] Rec. Doc. No. 33, ¶ 18.
[10] *Id.*
[11] *Id.* ¶ 19.
[12] *Id.*
[13] *Id.* ¶ 20.

organization using sonic and video recordings or broadcasting … public meetings of the City of Donaldsonville," and set public hearing for June 24, 2025.[14] While § 1 of the 2025 Ordinance—which was to be numbered as Section 2-49 of the City's Code of Ordinances—provides that "unofficial sonic and video recordings or broadcast by citizens or news organizations shall be allowed at public meetings [,]" § 2 proposed the following[15] requirements thereon,

> a. *Notice*. Notice of intent to film, broadcast or audio record any meeting must be provided to the Donaldsonville Council prior to the beginning of the meeting;
>
> b. *Decorum*. Filming, broadcasting or audio recording shall be done in a way that does not interfere with, distract, disrupt, or otherwise degrade decorum, nor be intended to harass or intimidate, the meeting officials, other meeting participants, the general public or the official recording/broadcasting of the meeting;
>
> c. *Designated Areas*. The Donaldsonville Council and/or any nonelected board or commission, reserves the right to designate an area of its meeting room where filming, broadcastings or audio recording equipment may be used;
>
> e. *Publication*. Film, video footage, or audio recordings of a meeting of the Donaldsonville Council or any nonelected board or commission may not be published or broadcasted in an edited form which misrepresents the manner in which the meeting was conducted or the events that occurred during the meeting;
>
> f. *Criminal Liability*. Any person who violates this subsection shall, upon conviction thereof, be punished as provided in La. R.S. 33: 1243;
>
> g. The Chairman … of the Donaldsonville Council, or Chairman … of any nonelected board or commission, shall be responsible for enforcing the guidelines of this section to maintain meeting decorum and may take necessary action for recordings and/or broadcasting deemed to violate this subsection or

---

[14] *Id.* ¶ 21; Rec. Doc. No. 1-1, p. 1.
[15] Rec. Doc. No. 1-1, pp. 1-2 (citation modified).

subsection (1), including … removal of the equipment and/or its operator;

The City Council voted unanimously to adopt the 2025 Ordinance on June 24, 2025.[16]

One day before the 2025 Ordinance's adoption—and after a delay she attributes to a fear of criminal liability—Daigle posted the video recording of the May 27 altercation between Councilman Brown and Price on her Facebook page.[17] Councilman Brown subsequently reacted to Daigle's post, commenting thereon, "you will be already better lucky next time[.]"[18] In any event, Daigle alleges that following the 2025 Ordinance's enactment, her ability to record public meetings was substantially limited. Specifically, while Daigle continued to attend City Council meetings, she no longer recorded every meeting for fear that she would be "arbitrarily deemed 'intimidating' or 'harassing'" and subject to removal and/or arrest.[19] In accordance with the 2025 Ordinance, when Daigle gave notice of her plans to record a City Council meeting, "she [was] told that she must stand in the back of the room … hinder[ing] the [video and audio] quality of her recordings, [and] … mak[ing] her feel further oppressed by the Council."[20] To this point, Daigle notes that she "has never seen another citizen be told to stand in the back of the room to record."[21]

On June 27, 2025—four days after Daigle's posting the video of the Brown/Price altercation on Facebook—the City Council called a special meeting for June 30 "to discuss and vote on the removal of [Daigle] and Trevis Fernandez from the Board."[22]

---

[16] Rec. Doc. No. 33, ¶ 29.
[17] *Id.* ¶27.
[18] *Id.* ¶ 31.
[19] *Id.* ¶ 33.
[20] *Id.* ¶¶ 34, 35.
[21] *Id.* ¶ 36.
[22] *Id.* ¶ 37.

Specifically, the meeting agenda contained the following items,[23]

> *Item 5(a).* Public Hearing to consider the removal of Shentelle Daigle for just cause from the Board of Adjustment;
>
> *Item 5(b).* Call for vote on the removal of Shentelle Daigle for just cause from the Board of Adjustment.

Although Daigle and a number of her supporters attended the meeting and "filled out public comment cards[,]" they were not given an opportunity to speak on the issue of Daigle's removal.[24] Further, while the meeting agenda suggested the vote for Daigle's removal was premised on "just cause[,]" no such cause was "identified or discussed" at the meeting.[25] Instead, Councilman Sullivan "made a motion to table the matter of removing [Daigle] and [Fernandez] indefinitely"—the motion was seconded by Councilman Cleveland Washington ("Council Washington") and the matter was "unanimously postponed."[26] No reason was provided, or discussion had, for the indefinite postponement of the matter and "the public was not given an opportunity to comment on … the Council's vote to table the measure."[27] Before the vote, however, Chairman Charles Brown ("Chairman Brown") "clarified that the vote was to table [and] not to remove the item from the agenda and stated 'I just want to make sure, because we'll definitely deal with that.'"[28]

To date, and even as Daigle serves as "acting Chair of the Board"—the matter of her removal remains indefinitely tabled before the Council.[29] An August 22, 2025 letter

[23] *Id.* ¶ 40.
[24] *Id.* ¶ 39.
[25] *Id.* ¶ 40.
[26] *Id.* ¶ 41.
[27] *Id.* ¶¶ 42, 44.
[28] *Id.* ¶ 43.
[29] *Id.* ¶ 53.

sent on Daigle's behalf to Mayor Sullivan and the City Council requesting clarification on "why [her] removal from the Board was proposed" received no response.[30] In July 2025, however, Councilman Brown commented to *The Advocate* newspaper that, seeking Daigle's removal was "a result of [her] misleading the public and literally not working with the city government."[31]

As a result of the 2025 Ordinance and her proposed removal from the Board, Daigle alleges that she has endured heightened anxiety, resulting in her "periodically not going to work" and an "increase [in] her anxiety medication."[32] Further, Daigle is more "hesitant to comment publicly at meetings for fear of being seen as antagonistic or 'against the government'" and "often self-censors [both as a private citizen and as a Board member] to avoid being perceived as critical of or against the City Council."[33]

On December 4, 2025, Daigle filed this lawsuit against the City, challenging (1) the constitutionality of the 2025 Ordinance, and (2) the conduct of the City Council as violative of Louisiana state law and several liberties protected by the First Amendment of the U.S. Constitution.[34] On January 27, 2026, the City Council introduced Ordinance 2026-01 (the "2026 Ordinance"), "revising and reenacting [Section] 2-49" in the following pertinent ways,

1. The "*Notice*" subparagraph was amended to state, "Individuals who intend to film, broadcast, or audio record a meeting are requested, but not required, to provide notice of such intent to the [City Council] prior to the beginning of the meeting."
2. The "*Decorum*" subparagraph was renamed "*Right to Record and Decorum*"

[30] *Id.* ¶ 46.
[31] *Id.* ¶ 49.
[32] *Id.* ¶ 50.
[33] *Id.* ¶¶ 51, 52, 55.
[34] *See* Rec. Doc. No. 1, pp. 12-18.

and amended to state, "Members of the public may audio or video record meetings as permitted by La. R.S. 42:23. Recording shall be conducted in a manner that does not materially interfere with, distract from, or disrupt the orderly conduct of the meeting."

3. The "*Designated Areas*" subparagraph was amended to add, "Recording equipment shall be operated in a non-disruptive manner and shall not obstruct the view of other members of the public, aisles, exits, or the conduct of the meeting."
4. The "*Criminal Liability*" subparagraph was removed entirely, and a new subparagraph entitled "*Violations and Enforcement*" added to state, "Any person who violates this ordinance may be directed by the presiding officer to correct the violation. If the violation is not corrected after such notice, the individual may be removed from the meeting for the remainder of that meeting only. Enforcement actions shall be based solely on observed conduct occurring during the meeting."
5. The "*Publication*" subparagraph was removed entirely, and a new subparagraph entitled "*No Regulation of Publication*" added to state, "Nothing in this Ordinance shall be construed to regulate, restrict, or prohibit the editing, publication, dissemination, or commentary regarding any recording lawfully made pursuant to La. R.S. 42:23."
6. The subparagraph (g) outlining the Chairman's authority to enforce the Ordinance was amended to clarify the Chairman's "shall be responsible for enforcing this Section in a content-neutral manner to maintain meeting decorum."

When the reversal ordinance was at the January 27 City Council meeting, the City's attorney commented, "I believe that the adoption of this particular ordinance would result in nearly every aspect of the lawsuit that has been filed in the particular matter to be mooted."[35] The 2026 Ordinance was adopted by a unanimous vote of the City Council

[35] Rec. Doc. No. 33, ¶ 57.

on February 24, 2026, and the 2025 Ordinance was, thus, "repealed."[36]

The City's first *Motion to Dismiss for Failure to State a Claim* was filed on January 28, 2026.[37] Upon Daigle's filing of the *Amending Complaint* on April 29, 2026,[38] however, that *Motion* was deemed moot and denied without prejudice.[39] Importantly, and save for the addition of the prayer for "compensatory damages," Daigle's *Amending Complaint* sought the same relief as her first *Complaint*, namely: (i) declaratory relief stating the 2025 Ordinance and the alleged policies and practices of the City Council violate the First Amendment and Louisiana Open Meetings Laws, facially and as applied; (ii) injunctive relief prohibiting the City from enforcing those violative policies and practices; (iii) injunctive relief ensuring adequate training for the City Council's members on the First Amendment rights of meeting attendees and the Council's obligations under Louisiana's Open Meetings Law; (iv) nominal and compensatory damages; and (v) attorney's fees and costs.[40] The City filed its second, and instant, *Motion to Dismiss for Failure to State a Claim* on May 21, 2026.[41]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[42] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[43] "Factual allegations must be enough to

---

[36] *Id.* ¶ 58.
[37] Rec. Doc. No. 10.
[38] Rec. Doc. No. 33.
[39] Rec. Doc. No. 41.
[40] *Compare* Rec. Doc. No. 1, p. 18 *with* Rec. Doc. No. 33, p. 23.
[41] Rec. Doc. No. 37.
[42] Fed. R. Civ. P. 12(b)(6).
[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

raise a right to relief above the speculative level."[44] A claim is facially plausible when the plaintiff has pleaded facts that allow the Court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[45]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[46] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[47] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[48] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[49] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[50] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[51] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[52] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[53]

---

[44] *Twombly*, 550 U.S. at 556.
[45] *Id.* at 570.
[46] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).
[47] *Iqbal*, 556 U.S. at 677-78.
[48] *Id* at 679.
[49] *Id* at 678.
[50] *Id.*
[51] *Id.*
[52] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).
[53] *Moore v. Metro. Human Serv. Dep't*, 2010 WL 1462224, at *2 (E.D. La. Apr. 8, 2010) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## III. LAW AND ANALYSIS

### A. Mootness

The City first argues that Daigle's request for declaratory and injunctive relief concerning the 2025 Ordinance should be dismissed as moot considering the City Council's unanimous adoption of the 2026 Ordinance, repealing same.[54] Specifically, the City contends that "[o]nce a challenged law has been repealed, claims seeking a declaration that the repealed law is unconstitutional or an injunction against its future enforcement are moot absent a nonconclusory basis to infer that the governmental body is likely to reenact the same measure."[55] Because counts one (1), two (2), five (5), and six (6), each "target the text of the repealed ordinance[,]" the City moves to "dismiss all requests for declaratory and injunctive relief aimed at the [2025 Ordinance] and proceed, if at all, only on a properly pleaded damages theory.[56]

Mootness is the doctrine of standing in a time frame—that is, "the requisite personal interest that must exist at the commencement of litigation … must continue throughout its existence…."[57] "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents."[58] As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."[59] Under Fifth Circuit case law, "the test for mootness depends on whether or not it is the defendant's voluntary conduct that moots the plaintiff's

---

[54] Rec. Doc. No. 37-1, p. 5.
[55] *Id.* (internal citations omitted).
[56] *Id.* at p. 6.
[57] *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (internal citations omitted).
[58] *Id.* (internal citation omitted).
[59] *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

suit."[60] When, as here, it is the defendant's voluntary conduct that brings it into compliance, "the test is stringent" and requires the party asserting mootness to bear the "formidable burden" of "demonstrat[ing] that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur."[61] The movant's burden is a heavy one so as to "protect[] plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform."[62]

The Court considers three factors in deciding whether the allegedly wrongful conduct is likely to recur, voluntary cessation notwithstanding: (1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the continued defense of the challenge policies (the "*Fenves* factors").[63] The City does not address these factors. Instead, the City argues that its "legislative repeal" of the 2025 Ordinance gives "special force" to its position that the City Council is not likely to reenact the same allegedly wrongful measure.[64] Indeed, "a lawsuit challenging a statute would [ordinarily] become moot by the legislature's enactment of a superseding law."[65] "That said, a defendant cannot [as the City suggests] automatically moot a case simply by ending its [allegedly] unlawful conduct once sued."[66] Instructively, the Fifth Circuit, in *Opulent Life Church v. City of Holly Springs, Mississippi*, held that a city's repeal of an ordinance the night before oral argument did not moot the plaintiff's challenges to same.[67]

---

[60] *Zen-Noh Grain Corp. v. Consolidated Envtl. Management, Inc.*, 2013 WL 3947186, at *9 (E.D. La. July 31, 2013) (citing *Envtl. Conservation*, 529 F.3d at 527).
[61] *Id.* (internal citations omitted and emphasis added);
[62] *Id.* (citing *Envtl. Conservation*, 529 F.3d at 527).
[63] *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-70 (6th Cir. 2019)).
[64] Rec. Doc. No. 37-1, p. 5.
[65] *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018).
[66] *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (internal citations omitted).
[67] 697 F.3d 279, 284-86 (5th Cir. 2012).

If that is all it took to moot a case, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."[68] The fact that the City, here, engaged in a "postsuit repeal" of the 2025 Ordinance requires the Court to determine whether its decision represented a "change of heart [or] mere litigation posturing."[69]

With respect to the first *Fenves* factor, the City has not made a controlling statement of future intention regarding the provisions of the 2025 Ordinance that Daigle now challenges as unconstitutional. While the City Council did repeal the 2025 Ordinance, Daigle's *Amending Complaint* makes clear that such legislative conduct cannot be understood to imply the City understood its decision to be a necessary correction for an unwise or unconstitutional policy. Prior to the 2026 Ordinance's adoption, for instance, "[n]ot one single Councilmember commented publicly on [either] Ordinance."[70] As Daigle correctly notes, then, "[the City] has offered no comment or discussion elucidating the cause of the repeal" such that the Court could conclude the repeal itself constitutes a controlling statement of future intent.[71] Thus, and absent any representation from an individual that controls whether the City Council will restore the challenged elements of the 2025 Ordinance, the Court has no explicit basis for concluding that it is *absolutely clear*[72] the City will never return to its previous course of conduct. Thus, the first *Fenves* factor militates against mootness.

---

[68] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).
[69] *Spell*, 962 F.3d at 179.
[70] Rec. Doc. No. 33, ¶ 60.
[71] Rec. Doc. No. 52, p. 9.
[72] *See Nelson v. LeBlanc*, 2020 WL 7365313, at *3 (M.D. La. Dec. 15, 2020) (quoting *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) ("Precedent clearly dictates that '[a] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'").

Second, the timing of the City Councils' decision to repeal the 2025 Ordinance—fifty-four (54) days after Daigle filed this lawsuit and one (1) day before the City's *Motion to Dismiss*, raising mootness on the basis of the "[O]rdinance introduced by the Donaldsonville City Council on January 27, 2026", is filed—is suspicious timing.[73] Especially salient is the fact that the City chose to argue mootness based upon the 2026 Ordinance before it had been formally adopted.[74] Where, as here, a maneuver may be "designed to insulate a decision from review by this Court[,] [it] must be viewed with a critical eye."[75] Yet, the City does not "explain the expedient timing of the [2025 Ordinance's] removal," nor does it provide any basis for the Court to determine its sincerity.[76] The only pronouncement on the issue appears to have been the City's counsel January 27, 2026 comment, opining "that the adoption of [the 2026 Ordinance] would result in nearly every aspect of [Daigle's] lawsuit" becoming moot.[77] Notably, neither the City, nor the City's counsel, disputes that this comment was made, instead contending "[m]otive does not preserve a moot request for prospective relief once the challenged law has been repealed."[78] But such is not the case where, as here, the timing of the 2025 Ordinance's reasonably gives rise to an inference that mootness has been manufactured to evade judicial review;[79] mootness jurisprudence has long been wary of such eleventh-

---

[73] Rec. Doc. No. 10-1, pp. 5-6.
[74] *See id* at p. 4 (noting "[t]he [2026 Ordinance] is set to be formally adopted at [the City Council's] February 24, 2026, regular meeting.").
[75] *Knox v. SEIU*, 567 U.S. 298, 307 (2012).
[76] *Fenves*, 979 F.3d at 329.
[77] Rec. Doc. No. 33, ¶ 57.
[78] Rec. Doc. No. 37-1, p. 5.
[79] The Court's conclusion on motive is further supported by the fact that "prior to the formal adoption of the [2026] ordinance, counsel for the City wrote Plaintiff's counsel and provided a copy of the draft ordinance … giv[ing] the opportunity to make any suggested changes." Rec. Doc. No. 37-1, p. 10.

hour gamesmanship.[80] Accordingly, the second *Fenves* factor, too, weighs against mootness.

Finally, the Court concludes the third *Fenves* factor also weighs against mootness. As Daigle notes, the City "has never acknowledged as valid, either publicly or in briefing, the [constitutional] deficiencies [Daigle's lawsuit] identified" regarding the 2025 Ordinance.[81] Instead, to the limited extent it has addressed the merits of Daigle's constitutional claims, the City expressly denies the impropriety of its challenged policies. In this *Motion*, the City argues "Louisiana law expressly permits a public body to establish standard for the use of lighting, recording, or broadcasting equipment to prevent obstruction and to preserve orderly conduct at meetings."[82] The Court reads this as the continued defense of the challenged policy.

As all three *Fenves* factors weigh against mootness, the City has not met its formidable burden to show that its voluntary cessation (repeal) of the challenged ordinance makes its "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[83] The City Council's adoption of the 2026 Ordinance, and contemporaneous repeal of the 2025 Ordinance, could equally be seen to be the very gamesmanship and litigation posturing that the voluntary-cessation exception to mootness is designed to overcome.[84] For this reason, the City's *Motion to Dismiss* is DENIED.

---

[80] *See United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 333 (1952) (discounting "protestations of repentance and reform, especially when abandonment seems timed to anticipate suit.").
[81] Rec. Doc. No. 52, p. 12.
[82] Rec. Doc. No. 37-1, p. 10.
[83] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).
[84] *See U.S. Navy SEALs 1-26 v. Biden*, 72 F.th 666, 674 (5th Cir. 2023).

B. Compensatory Damages

The City next argues that Daigle's *Amending Complaint* does not plausibly allege "actual injury" as is necessary to recover compensatory damages under 42 U.S.C. § 1983 and, thus, "the prayer for relief does not satisfy Rule 8."[85] Relying on the Supreme Court's decisions in *Carey v. Piphus*[86] and *Memphis Country School District v. Stachura*,[87] the City contends that absent sufficient allegations of "actual injury," such damages "may not be presumed" by the Court.[88] The City argues that Daigle "offers only general allegations that she suffered anxiety, has sometimes not gone to work, increased her anxiety medication, believes her reputation has been harmed, and self-censors."[89] Because Daigle (1) pleads no quantifiable economic loss—i.e., lost wages or lost income, (2) does not plausibly allege medical or emotional-distress damages, and (3) pleads no facts showing measurable reputational injury, the City requests dismissal of the "damages demand" or a "hold[ing] that the amended pleading states no claim for compensatory damages beyond nominal damages associated with any otherwise viable federal count."[90]

Daigle responds that *Carey* and *Stachura* both "involved post-trial challenges to the amount of compensatory damages awarded to the plaintiffs whose civil rights were violated" and, thus, "neither case stands for the proposition that to 'satisfy Rule 8' a plaintiff must plead specific numerical damages relating to her constitutional claim."[91] Further, to the extent the City's *Motion* raises Daigle's purported failure to comply with Federal Rule

85 Rec. Doc. No. 37-1, p. 6.
86 435 U.S. 247 (1978).
87 477 U.S. 247, 254-56 (1986).
88 Rec. Doc. No. 37-1, p. 6.
89 *Id.*
90 *Id.* at p. 8.
91 Rec. Doc. No. 52, p. 18.

of Civil Procedure 26 in the course of discovery and mandatory disclosures, Daigle argues "those arguments are beyond the scope of the motion to dismiss."[92]

The Court agrees on both counts. As an initial matter, the Court's task on a *Motion to Dismiss Under Rule 12(b)(6)* is clearly defined: "to determine if a legally cognizable claim has been asserted."[93] To the extent the City's *Motion* presents issues regarding the sufficiency of Daigle's responses to its discovery requests, such are not properly before the Court at this procedural posture. Second, it is clear to the Court that the City mistakenly assumes a prayer for compensatory damages must be pleaded in a manner sufficient to withstand post-verdict review if same is, in fact, awarded. Not so.

Rule 8 of Federal Rules of Civil Procedure ("FRCP") states that a complaint must contain "a demand for the relief sought;" it does not make any reference to the amount of damages sought or the specificity with which it must be pleaded.[94] Thus, "[w]hile a request for a particular form of relief [i.e., compensatory damages]… is a necessary component of a complaint, a demand for a specific amount of relief is not."[95] In other words, "there is no requirement that a plaintiff provide a detailed calculation of damages in its complaint"—while the party would be required to make such a showing at trial, "it need not do so at this early stage of the litigation."[96] Thus, the City's position that Daigle's request for compensatory damages, to the extent it "pleads no quantifiable economic loss," must be dismissed because "[it] does not satisfy Rule 8" is unpersuasive.[97]

---

[92] *Id.*
[93] *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 348 (M.D. La. 2022) (internal citation and quotation marks omitted).
[94] FED. R. CIV. P. 8(a)(3).
[95] *Lagarde Ltd. v. Federal Express Corp.*, 2025 WL 2337133, at * 6 (E.D. La. Aug. 13, 2025) (internal citation omitted).
[96] *Austin Beach Club, LLC v. Ethereal, LLC*, 2024 WL 314289, at *9 (W.D. Tex. Jan. 25, 2024).
[97] Rec. Doc. No. 37-1, p. 6.

Even so, it is well-settled that mental and emotional distress caused by a constitutional violation is compensable under Section 1983.[98] Notably, mental and emotional distress covers a variety of mental states, including “fear” and “anxiety.” The *Amending Complaint* articulates Daigle’s “fear” that, because of the alleged unconstitutional conduct, “she would be subject[ed] to criminal liability” and that “the Council was targeting her.”[99] Further, Daigle alleges her “worry” that “by giving notice and continuing to record [meetings], she risks making herself a further target for the Council.”[100] Thus, for fear that the full weight of the City Council was being brought to bear on her for the exercise of a constitutionally protected right, Daigle *specifically* alleges “heightened” and “persistent” anxiety sufficient to “increase her anxiety medication.”[101] Such is not, as the City argues, “a bare assertion … without facts linking that [act] to a municipal constitutional violation.”[102] To the contrary, and to the extent Daigle has stated a claim for First Amendment retaliation against the City (discussed below), she has also sufficiently alleged mental distress resulting from that deprivation. Daigle has, thus, sufficiently alleged mental and emotional distress “attributable to the City” and plausibly prays for compensatory damages.[103] The fact that Daigle “does not identify any physician, counselor, therapist, diagnosis, visit date, prescription expense, or treatment cost,” ignores that a plaintiff is not required—under Rule 8 or any other standard governing § 1983 claims—to prove his/her case, let alone damages, at the pleadings

[98] *See Vasquez v. LaFaurie*, 2025 WL 4348199, at * 1 (N.D. Tex. Apr. 30, 2025) (internal citation omitted).
[99] Rec. Doc. No. 33, pp. 7-8.
[100] *Id.* at p. 8.
[101] *Id.* at p. 12.
[102] Rec. Doc. No. 37-1, p. 7.
[103] *Id.*; *See Franks v. Smith*, 717 F.2d 183, 186 (5th Cir. 1983) (finding that compensation may be appropriate where the plaintiff alleges that mental distress resulted from the deprivation of her constitutional rights).

stage.

For these reasons, the Court identifies no basis to dismiss Daigle's prayer for compensatory damages. The City's *Motion to Dismiss* on this ground is, therefore, DENIED.

C. First Amendment Retaliation and *Monell* Liability

The City next argues that because "[m]ost of the alleged retaliatory conduct is either nonfinal, non-injurious, or not attributable to an official City policy [,]" Daigle's First Amendment retaliation claim "falls short on adverse action, causation, and municipal attribution."[104] While the City raises this point in contesting the sufficiency of Daigle's First Amendment retaliation cause of action, its briefing thereon significantly overlaps with its argument that Daigle does not state a claim for municipal liability under *Monell v. Department of Social Services of City of New York* ("*Monell*").[105] "[W]ithout a predicate constitutional violation, there can be no *Monell* liability[,]" so the Court considers the City's arguments on these interrelated issues together.[106]

Since Daigle's lawsuit names only the City as a defendant, her First Amendment retaliation claim must satisfy the elements for municipal liability set forth in *Monell*.[107] In *Monell*, the Supreme Court held that a governmental entity is liable under §1983 only when the entity itself caused the constitutional violation at issue.[108] Thus, to succeed on a *Monell* claim, the plaintiff must establish: "(1) a constitutional violation (2) for which the 'moving force' was (3) an official policy or 'governmental custom.'"[109] The requisite policy

[104] *Id.* at p. 10.
[105] 436 U.S. 658, 660 (1978).
[106] *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (internal citation omitted).
[107] 436 U.S. 658, 660 (1978).
[108] *See id.* at 694.
[109] *Washington v. Sunflower Cnty., Miss.*, 2024 WL 3510116, at *2 (5th Cir. July 23, 2024).

or custom, may exist in several forms, including, as relevant here, "a formally adopted … ordinance."[110]

***Constitutional Violation***. The First Amendment prohibits adverse and retaliatory government action against citizens for engaging in protected speech activities.[111] To state a First Amendment retaliation claim, Daigle must sufficiently allege that (1) she was engaged in a constitutionally protected activity, (2) the City's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing that activity, and (3) the City's adverse actions were substantially motivated against the plaintiff's exercise of the constitutionally protected conduct."[112] Importantly, Daigle "must establish a 'causal connection' between the [City's] 'retaliatory animus' and [her] 'subsequent injury.' It is not enough to show that [the City] acted and that [Daigle] was injured—the motive to quell speech must cause the injury."[113]

The City does not dispute that Daigle was engaged in a constitutionally protected activity. Subject to reasonable time, manner, and place restrictions, the First Amendment unquestionably protects the right to record matters of public interest.[114] Instead, the City first challenges Daigle's allegations of an "adverse action."[115] Specifically, the City argues the City Council's adoption of the 2025 Ordinance cannot be considered "retaliation" because "Louisiana law expressly permits a public body to establish standards for the use of lighting, recording, or broadcasting equipment to prevent obstruction and to

---

[110] *See Pipkins v. Stewart*, 105 F.4th 358, 360 (5th Cir. 2024); *Graniczny v. City of El Paso, Tex.*, 2011 WL 3666610, at *3 (W.D. Tex. Mar. 11, 2011) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).
[111] *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).
[112] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
[113] *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).
[114] *Cobarobio v. Midland Cnty., Tex.*, 2015 WL 13608102, at *11 (W.D. Tex. Jan. 7, 2015) (collecting cases).
[115] Rec. Doc. No. 37-1, p. 10.

preserve orderly conduct at meetings."[116] This argument, however, ignores that "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate."[117] The City's argument—without citation to authority—that Daigle's threatened removal from the Board is insufficient because "[a] proposed action that was never consummated" renders a retaliation claim thereupon "premature" is similarly unpersuasive.[118] It is well-settled that even the threat of action intended to "stifle protected speech" is actionable under the First Amendment "even if [the threat] turns out to be empty" and, thus, is never consummated.[119] That is, it is the fact that a "more than *de minimis*" act has been "taken in an attempt to chill the exercise of constitutional rights" that offends the First Amendment—just because the attempt did not go according to plan, or have its full intended consequence, does not obviate its unconstitutional character.[120]

The Court must, therefore, determine whether Daigle has sufficiently alleged City conduct that "would chill a person of ordinary firmness from engaging in expressive activities" as well as "an injury" therefrom.[121] A fair reading of the *Amending Complaint* identifies two allegations of "adverse action."[122] First, Daigle alleges that approximately one week after she was confronted by a member of the City Council for recording the Brown/Price altercation, the 2025 Ordinance—"which provides for the criminalization of citizens who film [or publish recordings of] public meetings" targeted her."[123] Second,

---

[116] *Id.* (citing LA. REV. STAT. § 42:23(B)).
[117] *Higgins v. Morris*, 673 Fed. Appx. 376, 380 (5th Cir. Dec. 12, 2016) (internal citation omitted).
[118] Rec. Doc. No. 37-1, p. 10.
[119] *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015); *Okwedy v. Molinari*, 333 F.3d 339, 340-41 (2d Cir. 2003).
[120] *Lempar v. Collier*, 710 Fed. Appx. 231, 233 (5th Cir. 2018).
[121] *Brown v. Jones Cnty. Junior College*, 463 F. Supp. 3d 742, 760 (S.D. Miss. 2020).
[122] Rec. Doc. No. 52, p. 13.
[123] Rec. Doc. No. 33, ¶ 85.

Daigle alleges that "less than one week" after "shar[ing] her recording of the altercation" on Facebook, the "City called a special meeting to vote on her removal from the Board."[124] While Daigle was not removed from her position during that meeting, the City Council tabled the matter "indefinitely"—without explaining either the reason for considering Daigle's removal or postponement of the vote thereon.[125]

The alleged conduct could plausibly *chill a person of ordinary firmness from engaging in expressive activities*.[126] It is settled that an actual and well-founded "fear [of] arrest and prosecution for noncompliance" with a statute targeting speech-related conduct has a "chilling effect" of constitutional dimension.[127] Daigle's concern is plausible based on her allegations she "is the only resident … who regularly attends and records City Council meetings,"[128] and that at least one councilmember (Councilman Brown) had already contemplated her prosecution under the 2025 Ordinance before its formal adoption.[129] Thus, Daigle has sufficiently pleaded an "adverse action" with respect to the City's adoption of the 2025 Ordinance. With respect to Daigle's proposed removal from the Board, at least one federal district court in this circuit has concluded "the threat of removal from office would chill any elected official from engaging in protected speech."[130] And while the Court recognizes Daigle's Board position is one of "volunteer" nature,[131] and was obtained through appointment rather than election,[132] the Court has no basis from which to conclude that threatened removal therefrom would not chill Daigle's right to

[124] *Id.* ¶¶ 86, 87.
[125] *Id.* ¶¶ 41, 44.
[126] Emphasis added.
[127] *JXN Undivided Coalition v. Tindell*, 771 F. Supp. 3d 872, 878 (S.D. Miss. 2025).
[128] Rec. Doc. No. 33, ¶ 25.
[129] *Id.* ¶ 31.
[130] *Bradshaw v. Salvaggio*, 2020 WL 8673836, at *6 (W.D. Tex. Oct. 28, 2020).
[131] Rec. Doc. No. 33, ¶ 6.
[132] *Id.* ¶ 13.

speak.[133] Importantly, the relevant "adverse action" in both instances is a threatened deprivation of the privilege to serve the public in a certain position.[134] The Court concludes that this represents a "concrete intimidat[ion] tactic"[135] that is neither "too trivial [n]or [too] minor to be actionable as a violation of the First Amendment."[136] The fact that the measure has been tabled "indefinitely" further contributes to its "chilling effect" because it is axiomatic that "[t]he power of a threat lies not in [] negative actions eventually taken, but in the apprehension it creates in [its] recipient."[137] Accordingly, the longer a threat's apprehension is felt, the more pronounced its "chilling effect" becomes. Daigle has, therefore, pleaded the City's efforts to remove her from the Board to be an "adverse action" sufficient for purposes of stating a First Amendment retaliation claim.

The Court further finds Daigle's injury claims plausible.[138] The Court is mindful "that § 1983 is a tort statute and that '[a] tort to be actionable requires injury," which in this context,' is the deprivation of a constitutional right."[139] Thus, facts sufficient to show Daigle's "free speech has been curtailed" in some way must be alleged—though, "[t]he effect on freedom of speech may [have] be[en] small."[140] Notably, in the First-Amendment context, "self-censorship" due to a fear of official sanction and enforcement action "can give rise to a cognizable constitutional injury."[141] Daigle alleges precisely this, stating

---

[133] *See Tucker v. Bieber*, 1989 WL 251218, at *2 (E.D. Mich. May 18, 1989) (discussing *Sheet Metal Workers Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989) (noting "the *Lynn* court did not refute that removal has an impact, or chilling effect on the free-speech rights of appointed officials.").
[134] *See generally Gewertz v. Jackman*, 467 F. Supp. 1047, 1057 (D. N.J. 1979) ("The threat of removal from a powerful committee position can be … chilling to the exercise of free speech").
[135] *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002).
[136] *Id.* at 258.
[137] *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).
[138] Rec. Doc. No. 37-1, p. 10.
[139] *Keenan*, 290 F.3d at 259 (internal citation omitted).
[140] *Id.*
[141] *McKinney v. Sharp*, 2026 WL 868598, at *6 (M.D. La. Mar. 30, 2026) (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018)); *Keenan*, 290 F.3d at 260 (finding sufficient that "Keenan

"[s]he is fearful of and refrains from engaging in protected speech, out of fear of government punishment."[142] More specifically, she explains that due to "fear that the Council was targeting her by drafting and passing the ordinance"[143] she "no longer records every meeting"[144] and "has been hesitant to comment publicly at meetings for fear of being seen as antagonistic."[145] Thus, Daigle now "plans out her comments in advance and often self-censors to avoid being perceived as critical of or against the City Council."[146] Further, Daigle alleges that she "self-censor[s] and second guess[es] herself within her role on the Board."[147] Such "injuries" are, in every sense, the kind of "abridg[ments]" that the First Amendment is intended to protect against.[148] The fact that Daigle nevertheless persisted[149] in protected speech activity despite her fears and worry of reprisal is of no instance because "[a] required showing of actual injury does not necessarily mean that plaintiffs must cease [protected conduct] altogether in order to have a claim for retaliation."[150] Daigle has, thus, alleged both adverse action by the City and constitutional injury sufficient to plead the second element of her First Amendment retaliation claim.

The City next argues that Daigle has not plausibly alleged "causation" to the extent the Amending Complaint "relies heavily on timing and on social-media comments

explained that after the incidents … he was afraid to travel in Precinct 5 and he 'backed off from direct involvement in helping expose unlawful practices' in the constable's office.)".

[142] Rec. Doc. No. 33, ¶ 91.
[143] *Id.* ¶ 30.
[144] *Id.* ¶33.
[145] *Id.* ¶ 51.
[146] *Id.* ¶ 52.
[147] Id. ¶ 55.
[148] U.S. CONST. AMEND. 1.
[149] Rec. Doc. No. 33, ¶¶ 34-35, 39, 52.
[150] *Keenan*, 290 F.3d at 260.

allegedly made by a councilmember's son and by Councilman Brown."[151] Thus, the City contends Daigle has not shown the City "as a municipal entity, adopted [an] official retaliatory policy."[152] As to causation, Daigle correctly notes, however, "[c]lose timing between [a] protected activity and an adverse [] action can be a sufficient basis for a court to find a casual connection required to make out a prima facie case of retaliation."[153] Further, it is settled that First Amendment retaliation "plaintiffs may rely upon 'a chronology of events from which retaliation may plausibly be inferred.'"[154]

Here, the proximity between Daigle's protected speech activity and the alleged adverse actions is "very close."[155] The Council's introduction of 2025 Ordinance on May 27, 2025, occurred just one week after Daigle's recording of the May 19 Brown/Price altercation drew the ire of Councilman Sullivan.[156] The measure was swiftly adopted by a unanimous City Council less than one month later on June 24. Likewise, the Council's decision to call a June 30 special meeting "to vote on [Daigle's] removal from the Board" was made "[l]ess than one week" after Daigle shared her recording of the May 19 altercation on Facebook.[157] Thus, the crux of Daigle's alleged retaliatory episodes transpired in the course of roughly one (1) month. While there is no clear line defining at what point the close proximity of an adverse action to protected conduct warrants "an inference of causation to be drawn[,]" the Fifth Circuit, in *Richard v. Cingular Wireless LLC*, determined "two and a half months" was sufficient to "make out [a] prima facie case

---

[151] Rec. Doc. No. 37-1, p. 11.
[152] *Id.*
[153] *Cripps v. La. Dept. of Agriculture and Forestry*, 819 F.3d 221, 230 (5th Cir. 2016).
[154] *McKinney*, 2026 WL 868598, at *7 n.98 (M.D. La. Mar. 30, 2026) (quoting *Brady v. Houston Independent School Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)).
[155] *Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 260 (5th Cir. 2011).
[156] Rec. Doc. No. 33, ¶ 21.
[157] *Id.* ¶¶ 86-87.

of retaliation."[158] So, too, is the case here. Accordingly, and taking all well-pleaded allegations as true, the Court concludes Daigle has alleged a sequence of events, occurring in sufficiently close proximity, from which a reasonable inference can be drawn that the City (1) harbored a retaliatory motive against Daigle's exercise of First Amendment activities and, (2) but for that motive, would not have undertaken the alleged adverse actions. Daigle has, thus, set forth sufficient facts to state a claim for First Amendment retaliation and the City's *Motion to Dismiss* on this ground is DENEID.

***Official Policy***. Having determined that Daigle has alleged sufficient facts to state a claim for First Amendment retaliation against the City—including retaliation and compensable injury arising therefrom—the Court next considers the City's argument that Daigle does not allege "a specific municipal policy that was the moving force behind a completed constitutional injury[,]" such that liability cannot be established under *Monell*.[159]

An "official policy" under *Monell* is a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority."[160] Accordingly, Daigle alleges that "[t]he City Council is the final policymaker for all actions taken during its meetings, including … passing ordinances, controlling the proposal of agenda items, [and] appointing and removing members from the Board."[161] The City does not dispute this assertion, nor does it dispute that the adoption of the 2025 Ordinance and initiating Board removal proceedings—even if subsequently "tabled"—are

[158] 233 Fed. Appx. 334, 338 (5th Cir. 2007).
[159] Rec. Doc. No. 37-1, p. 9.
[160] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).
[161] Rec. Doc. No. 33, ¶ 9.

"decision[s] … within the sphere of the [City Council's] final authority."[162]

The gravamen of the City's argument is that *Monell* liability is improper because the 2025 Ordinance "has now been repealed" and the Board removal measure "was never acted upon and remains 'tabled indefinitely.'"[163] Not so. The repeal of an ordinance does not *ipso facto* eliminate or cure the alleged retaliatory motive that gave rise to its adoption. To this point, the City cites no authority to support that post-deprivation remediation can cure the unconstitutional nature of the underlying act or, more so, the power of a court to decide same. Thus, the repeal of the 2025 Ordinance, while seemingly a wise decision, is not an escape hatch from liability. With respect to the Board removal measure, the City ignores that calling for a special meeting to vote upon a matter and indefinitely tabling the matter are acts of the City Council that could not be accomplished absent "some official action or imprimatur."[164] Indeed, both are acts of official adoption and promulgation bearing the imprimatur of the City Council.[165] The Court, thus, concludes that Daigle has sufficiently alleged that both the 2025 Ordinance and measure proposing her removal from the Board—along with its indefinite tabling—are "official policy" for purposes of *Monell* liability.[166]

---

[162] *Holland v. City of Houston*, 41 F. Supp. 2d 678, 698 (S.D. Tex. 1999).
[163] Rec. Doc. No. 37-1, p. 9.
[164] *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal citation omitted).
[165] Notably, calling for a special meeting is itself, an act requiring approval from the majority of the five (5) member City Council. *See* CITY OF DONALDSONVILLE, LA, CODE OF ORDINANCES art. II, § 2-23*, Special Meetings* (Sep. 26, 2025) (providing for special meetings "at the express written request of any three (3) members of the council."). Likewise, the tabling of the measure could not be accomplished by any one member of the City Council and, thus, the matter of its indefinite postponement is alleged to have been seconded by Councilman Cleveland Washington ("Washington") before unanimous approval by the Council. Rec. Doc. No. 33, ¶ 41.
[166] To the extent the City asserts the "allegations do not describe an official City policy[,]" the Court understands that argument to be directed towards the physical shove of Daigle's hand by Councilman Sullivan, which the City describes as "spontaneous conduct by individual council members after a committee meeting." Rec. Doc. No. 37-1, p. 9. It is true that "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action [and] isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578

***Moving Force***. The Court next considers whether Daigle has sufficiently alleged facts to demonstrate the 2025 Ordinance and Board removal measures as official policies) were the "moving force" of her complained of constitutional violations. The City argues she has not because the *Amending Complaint* "mixes together a repealed ordinance, an alleged shove of Plaintiff's phone by an individual councilman …, the proposal and tabling of a removal item, and asserted deficiencies in minutes and agendas dating back to 2020."[167] Thus, the City contends "a specific municipal policy [that] was the moving force behind a completed constitutional injury" has not been plausibly alleged.[168]

To satisfy the "moving force" prong of *Monell* liability, a plaintiff must show both causation and culpability.[169] As to causation, "a plaintiff must show a direct causal connection … between the policy and the alleged constitutional deprivation."[170] "This connection must be more than a mere 'but for' coupling between cause and effect."[171] As to culpability, it must be shown that the challenged policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."[172] Instructively, the Fifth Circuit defines "deliberate indifference" as "a lesser form of intent rather than a heightened form of negligence."[173]

Daigle pleads specific facts in support of causation, alleging that "because of [the

---

(5th Cir. 2001). That said, Daigle's constitutional claim—First Amendment retaliation—is not predicated on such and, thus, the City's argument, correct as it may be, does not require a different result.

[167] Rec. Doc. No. 37-1, p. 9.

[168] *Id.*

[169] *Warren v. Gusman*, 2016 WL 5334799, at *2 (E.D. La. Sep. 23, 2016).

[170] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015).

[171] *Estate of Bonilla by& through Orange Cnty., Tex.*, 982 F.3d 298, 312 (5th Cir. 2020).

[172] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (internal citation omitted).

[173] *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 531 (5th Cir. 1994) (internal citation and quotation marks omitted).

City's] actions" her speech "has been chilled."[174] Daigle's alleges self-censorship and "hesita[tion] to comment publicly at meetings" to the 2025 Ordinance and "the threat of removal [from the Board] hanging over her head."[175] These allegations plausibly support a "direct causal connection" between the challenged policies and the alleged constitutional deprivation. The Court also concludes that Daigle has alleged the City Council undertook both the 2025 Ordinance and Board removal measures with deliberate indifference to Daigle's rights under the First Amendment. In this context, "deliberate indifference must amount to an intentional choice, not merely an unintentional negligent oversight."[176] To the extent both the 2025 Ordinance and Board removal measures have been sufficiently pleaded as retaliatory adverse actions, the import is that Daigle has alleged these policies were "taken in an effort to either chill [Daigle's] exercise of [her] right to free speech, or to punish [her] for having exercised that right."[177] Thus, Daigle has not only alleged the City Council was "aware of facts from which the inference could be drawn that a substantial risk of [depriving Daigle of First Amendment rights] exist[ed][,]" she has sufficiently alleged that such deprivation was their aim.[178]

Because Daigle has sufficiently alleged the City Council, as a final policymaker, undertook official policies that were the moving force of a constitutional violation, Daigle has sufficiently pleaded plausible municipal liability under *Monell*. The City's *Motion to Dismiss* on this ground is DENIED, accordingly.

---

[174] Rec. Doc. No. 33, ¶ 91.
[175] *Id.* ¶¶ 50, 51, 52, 55.
[176] *August v. Wood*, 2015 WL 1090868, at *2 (E.D. Tex. Feb. 13, 2015) (citing *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted)).
[177] *Sorens v. Estate of Mohr*, 2005 WL 1965957, at *4 (S.D. Tex. Aug. 16, 2005).
[178] *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) (defining deliberate indifference).

D. Abuse of Process

The City next seeks dismissal of Daigle's cause of action for an abuse of process under Louisiana law.[179] Louisiana courts recognize an abuse of process claim as a compensable tort under Louisiana Civil Code art. 2315.[180] To state a claim for abuse of process, a plaintiff must allege (1) "the existence of an ulterior purpose," and (2) "a willful act in the use of the process not proper in the regular prosecution of the proceeding."[181] As a threshold matter, however, the Court must decide whether "process"—as that term is understood in the context of an *abuse of process* claim—includes those proceedings and procedures through which a city council adopts an ordinance or exercises its power to appoint and remove officials from a zoning board.

The City argues that because Daigle's "allegations do not involve judicial or quasi-judicial process in the sense required for abuse of process[,]" but rather, instances of "legislative agenda setting and parliamentary action[,]" there can be no claim for abuse of process as a matter of law.[182] Daigle responds that, "[w]hile abuse of process claims are historically grounded in processes that are legal in nature," at least one Louisiana appeals court, in *Almerico v. Dale*, noted "[a]buse involves misuse of process already legally issued whereby a party attempts to obtain some result not proper under law."[183] Because Daigle maintains "process" includes "legal process[es]," broadly, legislative proceedings governed by procedures set forth under municipal law certainly qualify.[184] Accordingly, Daigle contends the City Council "initiated [a] judicial process of removal by scheduling a

[179] Rec. Doc. No. 37-1, p. 11.
[180] *Delcambre v. Mancuso*, 268 So.3d 325, 331 (La. App. 3 Cir. 2019).
[181] *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (internal citation omitted) (citation modified).
[182] Rec. Doc. No. 37-1, p. 11.
[183] Rec. Doc. No. 52, p. 16 (quoting 927 So.2d 586, 594 (La. App. 5 Cir. 2006)).
[184] *Id.*

public hearing to discuss [her] removal from the Board."[185]

After a careful review of the Louisiana jurisprudence on this issue, the Court agrees with the City's argument. Instructively, agreeing with a district court's conclusion that a private professional organization's proceedings did not constitute "process" in this context under Louisiana law, the Fifth Circuit, in *Ioppolo v. Rumana*, observed "Louisiana courts have never considered the 'process' element of a cause of action for abuse of process 'anything other than legal process, or *court process*.'"[186] A close reading of *Almerico* clarifies this to be the case even where the relevant procedure is prescribed by state statute, noting "we find no cases in which 'process' refers to a civil service disciplinary matter that has not come within purview of a *court proceeding*."[187] Further, and to the extent abuse of process "consists in the … misapplication of … [legal] process after issuance to accomplish some purpose not warranted or commanded by the *writ* [,]"[188] the Court finds language from, *State v. Dunnington*,[189] although an older case, especially persuasive. That is, "[a] writ is process and process is a writ interchangeably … [in that] a writ, specifically, is a precept in writing … issuing from a court of justice and sealed with its seal, addressed … to the persons whose action the court desires to command."[190] Accordingly, the Court understands abuse of process, under Louisiana law, to be limited to misapplication of those processes that are available through the court system or otherwise occurring in the course of a court proceeding; in other words, that which is legal

---

[185] *Id.* at p. 17.
[186] 581 Fed. Appx. 321, 326 (5th Cir. 2014) (citing *Almerico*, 927 So.2d at 594) (emphasis added).
[187] *Almerico*, 927 So.2d at 594 ("That statute [La. R.S. 40:2531] cannot be cited … as a basis for an abuse of process claim.") (emphasis added).
[188] *Succession of Cutrer v. Curtis*, 341 So.2d 1209, 1214 (La. App. 1 Cir. 1976), *writ denied*, 343 So.2d 201 (La. 1977) (citation modified).
[189] 157 La. 369 (La. 1924).
[190] *Id.* at 380 (emphasis added).

in nature.

Because the conduct Daigle alleges to be an abuse of process involves neither a court process nor a court proceeding, the Court concludes such a claim must fail as a matter of law. The City's *Motion to Dismiss* on this ground is GRANTED.

E. Open Meetings Law

Daigle's final cause of action alleges several violations of Louisiana's Open Meetings Law ("OML"), including: (1) the City's failure, since April 2020, to publish meeting minutes or a record of agendas for any standing or special committee, board, or commission, except for the City Council;[191] (2) the City's failure to prepare or publish minute meetings for the City Council's Committee of the Whole meetings, including the May 19, 2025 meeting;[192] (3) the City's failure to publish City Council meeting minutes since June 30, 2025;[193] (4) the City's failure to allow public comment on the Board removal measure;[194] and (5) the City's adoption of the 2025 Ordinance to the extent it allows for the removal of persons who are not "willfully disruptive" of the meeting's orderly conduct.[195] Daigle, accordingly, seeks declaratory judgment stating the above policies and practices violate the OML, and injunctive relief ensuring adequate training for City Council members on government obligations under the OML.[196]

The Louisiana Constitution declares that no person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.[197] Embodying this guarantee, the Louisiana OML provides that

[191] Rec. Doc. No. 33, ¶¶ 63, 67.
[192] *Id.* ¶ 64.
[193] *Id.* ¶ 66.
[194] *Id.* ¶¶ 105, 107.
[195] *Id.* ¶ 108.
[196] *Id.* at p. 23; Rec. Doc. No. 52, p. 20.
[197] LA. CONST. art. XII, § 3.

every meeting of any public body shall be open to the public unless closed pursuant to statute.[198] The OML, however, must be liberally construed in favor of assuring that public business is performed in an open and public manner and that citizens are advised on and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.[199]

The City now argues for Daigle's OML cause of action to be dismissed or "sharply narrowed" for several reasons.[200] First, the City argues that, to the extent Plaintiff seeks civil penalties against a defendant municipality under La. R.S. § 42:28, same is precluded as the statute only runs against "member[s] of a public body who knowing and willfully participates in a meeting conducted in violation of the [OML]."[201] Daigle does not contest this point and, in any event, it is unclear from the face of the *Amending Complaint* whether Daigle seeks to impose civil penalties. That said, the Court agrees with the City's argument—the plain language of La. R.S. § 42:28 confines its application to "member[s] of a public body."[202] Because Daigle has named only the City as a defendant in this action, civil penalties under § 42:28 are not available and the *Motion to Dismiss* on this ground is GRANTED.

Second, the City argues that, while Daigle "lumps together alleged failures to publish minutes and agenda from April 2020 through December 2025[,] … a suit to void action under the [OML] must be filed within sixty days of the action."[203] Thus, the City contends Daigle's "attempts to obtain relief tied to actions taken years before suit … are

[198] LA. REV. STAT. § 42:14.
[199] *Id.* § 42:12.
[200] Rec. Doc. No. 37-1, p. 11.
[201] *Id.* at p. 12.
[202] LA. REV. STAT. § 42:28.
[203] Rec. Doc. No. 37-1, p. 12 (citing LA. REV. STAT. § 42:24(B)).

time-barred under the statute's own limitation period."[204] At a minimum, however, the City maintains that Daigle's claim "must be narrowed to any specific, timely challenged action."[205] Indeed, La. R.S. § 42:24 provides that, "[a] suit to void any action must be commenced within sixty days of the action."[206] Daigle responds, however, that she "does not seek to void the alleged wrongdoing of the City [] Council members during meetings, [but] rather seeks (1) declaratory relief stating the [2025 Ordinance] violates the OML … and (2) injunctive relief prohibiting the enforcement of policies that violate the OML."[207] The Court agrees, albeit with the observation that the *Amending Complaint*—which controls on occasions of inconsistency—describes Daigle's prayer for injunctive relief as requesting "adequate training for … City Council members on … government obligations under Louisiana [OML]."[208] The OML makes clear that "declaratory judgment" and "injunctive relief" are "forms of relief" separate and distinct from "judgment rendering [an] action void as provided in R.S. [§] 42:24."[209] To the extent the City relies on that provision in arguing certain aspects of Daigle's OML claim are time-barred, the *Motion to Dismiss* is DENIED.

Third, the City argues that Daigle's "theory that the [2025 Ordinance] itself violated the [OML] no longer supports forward-looking relief because the ordinance has been repealed."[210] Further, the City notes that the OML "does not support a free-standing damages claim against the City based on a repealed ordinance once prospective relief

[204] *Id.*
[205] *Id.*
[206] LA. REV. STAT. § 42:24 (Voidability).
[207] Rec. Doc. No. 52, p. 20.
[208] Rec. Doc. No. 33, p. 23 (B)-(C).
[209] LA. REV. STAT. § 42:26(A)(2)-(4).
[210] Rec. Doc. No. 37-1, p. 12.

has become moot."[211] As an initial matter, Daigle's OML claim is not properly characterized as "free-standing damages claim." The OML provides for "enforcement proceeding[s]" in which the "plaintiff may seek and the court may grant" enumerated "forms of relief."[212] Notably, compensatory (or any other) damages are not available under the OML and, thus, the City's portrayal of Daigle's OML as a claim for such is improper. For that same reason, the City's contention that Daigle "seeks broad declaratory relief and injunctive relief and civil penalties, but [] does not identify what concrete compensatory damages were caused by any missing minute or agenda posting[,]" is unpersuasive and the *Motion to Dismiss* on that ground is DENIED.[213]

With respect to the City's claim that "prospective relief has become moot" under the OML, the Court finds this position unpersuasive for two reasons. First, it is clear to the Court that Daigle's prayer for injunctive relief is premised, in part, on violations of the OML that were ongoing at the time this lawsuit was first filed.[214] Second, to the extent Daigle's requests for declaratory and injunctive relief focus on the 2025 Ordinance's violation of the OML, Louisiana jurisprudence recognizes a "voluntary cessation" exception to mootness doctrine—which is otherwise applicable to OML claims[215]—under which "the defendant must show with assurance that there is no reasonable expectation that the alleged violation will recur."[216] Thus, it is axiomatic under Louisiana law that,

---

[211] *Id.*
[212] LA. REV. STAT. § 42:26.
[213] Rec. Doc. No. 37-1, p. 13.
[214] Rec. Doc. No. 33, ¶ 63 ("Between April 14, 2020, and the date of filing the original Verified Complaint … the City … has not published meeting minutes"); *Id.* ¶ 67 (Between April 14, 2020, and the date of filing the original Verified Complaint … the City … has failed to maintain a consistent record of agendas").
[215] *Buchanan v. State Civ. Serv. Comm'n*, 372 So. 2d 1065, 1066 (La. Ct. App. 1979) (citing *State ex rel. Preston v. Henderson*, 283 So.2d 230 (La.1973)) ("It is well settled that the courts will not rule on questions of law which become moot since its decree will serve no useful purpose and can give no practical relief.").
[216] *Cat's Meow, Inc. v. City of New Orleans through Dept. of Finance*, 720 So.2d 1186, 1194 (La. 1998).

although the City did voluntary repeal the 2025 Ordinance, "that change alone does not make [Daigle's OML claim] moot."[217] And while the Court acknowledges a difference in language between the burden that the Louisiana and Fifth Circuit voluntary cessation standards impose on defendants—"show[ing] with assurance" versus "demonstrat[ing] that it is *absolutely clear*" that the allegedly wrongful behavior could not reasonably be expected to recur, respectively—the Court finds its analysis in Section III(A) of this Ruling instructs the City has failed to meet its burden under either standard. The City's *Motion to Dismiss* on this ground is, therefore, DENIED.

## IV. CONCLUSION

For the foregoing reasons, the City's *Motion to Dismiss Under Rule 12(b)(6)*[218] is **GRANTED in part and DENIED in part**. Plaintiff's cause of action for *abuse of process* (Count 4) is **DISMISSED** with prejudice, accordingly. Further, to the extent Plaintiff's prayer for relief includes a request for civil penalties against the City under La. R.S. § 42:24, that request is **DENIED** with prejudice. In all other respects, the *Motion to Dismiss* is **DENIED**.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 20 th day of November, 2026.

Shelly D. Dick

**CHIEF JUDGE SHELLY D. DICK**
**MIDDLE DISTRICT OF LOUISIANA**

[217] *Id.*
[218] Rec. Doc. No. 37.